## HENRIETTE, alias MARY, *v.* HEIRS OF CHARLES BARNES.

The emancipation of a slave by last will only takes effect after the formalities prescribed by Article 187 of the Code have been fulfilled; that is to say, after a declaration shall have been made to a competent court; after that declaration shall have been advertised; and after the oppositions, if any be made, shall be determined. The declaration of intention to emancipate is to be made by the executor, or by the heir of the testator. BUCHANAN and VOORHIES, JJ., and MERRICK, O. J.

Since the statute of 1846 a slave taken from Louisiana to California does not thereby acquire freedom. BUCHANAN and VOORHIES, JJ., and MERRICK; O. J.

A slave carried from Louisiana to California by her-master, though she there acquires the *status* of a free person, cannot stand in judgment in this State, except in a suit for freedom. SPOFFORD, VOORHIES and LEA, JJ., and MERRICK, O. J.

If the court were to decree to the plaintiff, now in California, the legacies bequeathed to her, her freedom would be recognized, which would be final between the parties to this suit. What then would prevent her return to Louisiana? What force would there be in the Act of 1846, after her freedom had been recognized by the court. MERRICK, O. J., and VOORHIES, J.

APPEAL from the District Court, Third District, Parish of Jefferson, *Burthe*, J. *R. N. Ogden*, for plaintiff. *Marks*, for defendants and appellants.

BUCHANAN, J., with whom concurred MERRICK, C. J., and VOORHIES, J. This suit was instituted in April, 1852. The plaintiff sues for herself and for her minor daughter, for legacies bequeathed to them by the late *Charles Barnes*, to wit: one thousand dollars to the mother and five hundred dollars to the daughter. The defence is, first, that the plaintiff is a slave to the succession and not capable of standing in judgment: and if this exception be overruled, that the legacies in question exceed the disposable portion (the testator having left a father and mother) and should be reduced to such portion.

The will of *Charles Barnes*, made at Freeport, in the parish of Jefferson,

HENRIETTE
*v.*
BARNES.

June 14th, 1847, reads as follows: "I, *Charles Barnes*, will and bequeath to my servant girls, named *Henrietta, alias Mary*, and her child, *Mary, alias Marietta*, their freedom and emancipation, according to law, from and after my decease, and as much of the proceeds of my property as one thousand dollars, and all my house furniture, to the said girl *Henrietta, alias Mary ;* and the sum of five hundred dollars to be invested in a lot of ground in the corporation of Lafayette or Freeport, to be and is hereby given to my little servant girl *Mary, alias Marietta*. If possible, my executors will purchase for *Henrietta, alias Mary*, a lot and dwelling with said one thousand dollars, which is thus to be laid out. I hereby dispose of the balance of my property to my relation as the law directs for the same."

This is an enfranchisement by last will ; and this mode of enfranchising a slave is recognized by our law, provided the manumission be made with the forms and under the conditions prescribed by law. C. Code, Art. 184. Those forms and conditions are particularly detailed in Articles 185 and 187. We infer from the phraseology of the Article first quoted (184) that an emancipation of a slave by last will only takes effect after the formalities prescribed by Article 187 of the Code shall have been fulfilled ; that is to say, after a declaration shall have been made to a competent court ; after that declaration shall have been advertised ; and after the oppositions, if any be made, shall be determined. 4 Rob., 179 ; 9 An., 176 ; *Delphine* v. *Guillet*, lately decided. The declaration of intention to emancipate is to be made by the executor, or by the heir of the testator. But in the present case none of these formalities have been observed. On the contrary, it seems to be taken for granted that the plaintiff has acquired the *status* of a free person because her master, *Barnes*, after making his will, took her and her child with him to California, a State in which slavery does not exist, with the avowed intention that she should be free ; in which State, as appears from the petition, she still resides.

We cannot admit the correctness of this position. *Barnes'* will was made in Louisiana, of which State he was at the time a resident ; where his property is situated ; and where his succession is in course of administration. It is evident from the language of the will, made two years before his departure for California, that the intention of the testator was that the emancipation should be effected according to the law of Louisiana. It is the policy of this State, as evinced by its legislation, to restrict the power of masters to emancipate their slaves. Emancipation is considered to be a matter which concerns the State, inasmuch as its tendency is to substitute a free colored population for the system of compulsory labor, which involves to such a vast extent the fortunes of our citizens and the production of our agricultural staples. Accordingly we find that in the year 1842 masters were forbidden by law to take their slaves into free States. (Acts of 1842, p. 314.) And in the year 1846 it was enacted that no slave should thenceforward be entitled to his or her freedom, under the pretence that he or she has been, with or without the consent of his or her owner, in a country where slavery does not exist, or in any of the States where slavery is prohibited. (Session Acts of 1846, p. 163.) This latter statute is conclusive of the right of plaintiff to be considered as actually free, in consequence of having been taken by her master to California. Under the decisions of the Supreme Court of Louisiana prior to the Act of 1846, such transportation would have had the effect contended for ; but it is well known that the Act in question was passed in consequence of those decisions. The defendants' exception should have been maintained.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and that this suit be dismissed, at cost of plaintiff and appellee.

MERRICK, C. J., with whom concurred VOORHIES, J.  The plaintiff is *quoad* our laws still a slave.  (Acts of 1846, p. 163.)  Were we to decree to the plaintiff the legacies bequeathed to her in the will of *Charles Barnes*, we should recognize her freedom by a judgment which would be final between the parties to this suit.  What then would prevent her return to Louisiana ?  What force would there be in the Act of 1846 after we had recognized her freedom ?

I think for the reasons assigned both by Mr. Justice BUCHANAN and Mr. Justice SPOFFORD that the judgment of the lower court ought to be reversed.

SPOFFORD, J., with whom concurred MERRICK, C. J., VOORHIES, J., and LEA, J.  The plaintiff was not manumitted acording to the forms of our law before she departed for California with her master.

Although, by the law of California, where she now resides, she possesses the *status* of a free person, and although she cannot now be reclaimed by the heirs of *Barnes*, because she is not a fugitive from labor or service, having been carried hence to California by her master, with intent to remain permanently, still the policy of our local statutes forbids that she should stand in judgment in the courts of Louisiana for any other cause than to sue for her freedom.  Act of May 30th, 1846, p. 163; C. C., 177.  As, if she returned hither, she would be a slave until duly enfranchised according to our laws, so, until she is thus enfranchised, she cannot be heard in our courts to sue for a legacy left her in Louisiana by the will of *Barnes*, executed here when she was his slave.

For these reasons I concur in the judgment of non-suit.